**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ARTHUR DALE SENTY-HAUGEN,**

     **Petitioner,**

**v.**                                     **Civil Action No. 1:20cv47**
                                                **(Judge Kleeh)**

**PAUL ADAMS, Warden FCI Hazelton,**

     **Respondent.**

## REPORT AND RECOMMENDATION

This case is before the undersigned for consideration of *pro se* petitioner Arthur Senty-Haugen's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Respondent's Motion and Memorandum to Dismiss or, in the Alternative, for Summary Judgement, and Petitioner's Response in Opposition to Respondent's Motion. ECF Nos. 1, 10, 15.

## I. Procedural History

On March 16, 2020, Petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1. On March 20, 2020, Petitioner paid the $5 filing fee. ECF No. 4. On November 17, 2020, the undersigned ordered Respondent to show cause as to why the writ should not be granted. ECF No. 8.

On December 15, 2020, Respondent answered with a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a Memorandum in Support and exhibits. ECF Nos. 10, 10-1 – 10-4. A Roseboro Notice was issued to the Petitioner by the undersigned on December 16, 2020, pursuant to Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975), instructing Petitioner of his right to file a response to Respondent's Motion and Memorandum. ECF No. 11. Petitioner filed a Response in Opposition on January 7, 2021. ECF No. 15.

## II.      Facts[1]

### A. Background

On December 11, 1992, when the petitioner was twenty-five years old, he was arrested and eventually charged in the Ramsey County District Court in St. Paul, Minnesota with eight criminal counts. Counts 1, 3, 4, 5 and 7 charged him with Third Degree Criminal Sexual Conduct. Count 2 charged him with Fourth Degree Criminal Sexual Conduct. Count 6 charged him with First Degree Tamper with Witness.  Finally, Count 8 charged him with Second Degree Criminal Sexual Conduct.  On July 12, 1993, the petitioner pleaded guilty to all counts.  On July 29, 1993, he was sentenced as follows: Count 1: 18 months prison concurrent with Counts 2 and 3; Count 2: 15 months prison concurrent with Counts 1 and 3; Count 3: 27 months prison concurrent with Counts 1 and 2; Count 4: 18 months confinement stayed for 15 years, 15 years' probation; consecutive with Counts 5, 6, 7, and 8; Count 5: 18 months confinement stayed for 15 years, 15 years' probation; consecutive with Counts 4, 6, 7, and 8; Count 6: 18 months confinement stayed for 25 years, 25 years' probation; consecutive with Counts 4, 5, 7, and 8; Count 7: 18 months confinement stayed for 15 years, 15 years' probation; consecutive with Counts 4, 5, 6, and 8; Count 8: 21 months confinement stayed for 25 years, 25 years' probation; consecutive with Counts 4, 5, 6, and 7.

In 1994, Petitioner was assessed by a Licensed Psychologist to determine whether he met criteria from a psychological perspective, of a psychopathic personality and sexually dangerous person.  The evaluation diagnosed Petitioner as experiencing pedophilia and antisocial personality disorder.

---

[1] The information in this section is taken from materials supplied by both Petitioner and Respondent, Petitioner's criminal docket in the United States District Court for the District of Minnesota (Criminal Number 1:17-cr-182-JNE-LIB), and Petitioner's PSR in that case, which was provided to the *pro se* law clerk. Petitioner has access to his PSR through his unit manager or unit counselor.

On December 6, 1994, Petitioner was ordered to be held at the Minnesota Security Hospital in St. Peter following his release from prison and pending further court action.  On December 14, 1994, Petition was released from confinement and sent to the Minnesota Security Hospital.  On April 1, 1996, he was ordered indefinitely committed to the custody of the Minnesota Sex Offender Program (MSOP) (which was then known as the Minnesota Psychopathic Personality Treatment Center) in Moose Lake, Minnesota after the Ramsey County District Judge concluded that he had a sexual psychopathic personality and was a sexually dangerous person.

On November 6, 2004, an Indictment was returned against Petitioner in the United States District Court for Minnesota which contained 21 counts of Aiding and Abetting False Claims in violation of 18 USC §§ 2 and 287 plus 7 counts of Aiding and Abetting False Claims in violation of 18 U.S.C. §§ 2 and 287.  Finally, the Indictment charged Petitioner with 1 Count of Conspiracy to Defraud the Government with Respect to Claims in violation of 28 U.S.C. § 286.[2]  On January 14, 2005, Petitioner pleaded guilty to 5 counts of Aiding and Abetting False Claims and the 1 count of Conspiracy to Defraud the Government with Respect to Claims.  The remaining counts were dismissed. On August 25, 2005, a Sentencing Judgment was entered committing Petitioner to the custody of the Bureau of Prisons ("BOP") for an effective term of 57 months and requiring him to pay restitution in the amount of $71,610.90.

Petitioner served this period of imprisonment between three institutions: the Federal Medical Center, Devens, Massachusetts; the United States Penitentiary, Marion, Illinois; and the

---

[2] Beginning in 1998 and continuing until 2002, Petitioner created several corporations that were either fully fictitious or did not conduct any business. Using these corporations, Petitioner filed at least 21 false Form 941s, which are required to be filed by businesses on a quarterly basis. In these forms, Petitioner listed "employees" who were either dead, incarcerated with him in the Minnesota Department of Corrections, or other clients confined at MSOP. Petitioner also participated in preparing and filing false, fictitious, and fraudulent individual income tax returns for himself and four other individuals. Petitioner's intended loss was determined to total $228,151.57.  Actual loss paid out by the IRS as the result of Petitioner's conduct totaled $71,610.90.

Federal Correctional Institution, Sandstone, Minnesota. On June 6, 2009, Petitioner was released from the BOP to a detainer lodged by the MSOP.

Following his release from the BOP to the MSOP, Petitioner committed a number of additional crimes while in the MSOP.  First, on August 9, 2012, a complaint was filed against petitioner by another confined individual alleging Petitioner used D.A.H.'s personal information to fraudulently open multiple credit cards. D.A.H. told investigators he provided Petitioner with personal information because Petitioner said he would assist D.A.H. with Veterans Administration benefits. Upon review of phone records at MSOP, at least 22 conversations were located where Petitioner spoke to another individual regarding the fraudulent cards. Over a six-month period of time in 2012, Petitioner opened at least three credit cards and amassed charges of at least $11,738.06 in D.A.H.'s name. On August 19, 2014, Petitioner pleaded guilty, and on January 16, 2015, he was sentenced to 15 months confinement;  and $2,164.88 in restitution. Next, on June 24, 2014, police responded to an incident at the MSOP on a report of an assault on staff. The report indicates MSOP Security Counselor T. S. responded to an incident involving another confined individual, B.K.B., who struck T.S. in the face several times and pushed T.S. down. Petitioner then jumped on top of T. S. and hit T. S. several times in the head. Petitioner proceeded to assault another security Counselor, D. M. who attempted to assist T.S. On August 19, 2014, Petitioner pleaded guilty, and on January 16, 2015, he was sentenced to ninety days in jail as to each count to be served concurrently to each other and to the above referenced sentence imposed on January 16, 2015. Finally, on August 12, 2014, while confined at MSOP, Petitioner was found to be in possession of a contraband cellular phone. Upon review of facility records (monitored phone calls and cameras), MSOP Security Counselor A.B.R. was observed supplying Petitioner with the phone. Records further indicate Petitioner used his parents to assist with the phone's purchase and

4

in sending payment to A.B.R. Upon being confronted, A.B.R. admitted he was offered $3000 to provide Petitioner with a contraband phone within the MSOP facility. On October 21, 2015, Petitioner was sentenced to 26 months confinement with credit for 383 days. He was released from the Minnesota Department of Corrections to detainer and returned to MSOP.[3]

## B. **Current Conviction**

The instant matter relates to Petitioner's scheme to defraud the United States Government by filing false federal income tax returns on behalf of fellow residents at MSOP. The scheme took place from 2012 to 2017. More specifically, Petitioner operated a scheme to obtain money from the United States Government by filing false federal income tax returns claiming refunds on behalf of fellow clients of the MSOP ("the filers") to which the filers were not entitled. As part of the scheme, Petitioner obtained personal information such as names and Social Security numbers from the filers. He then completed and filed, or directed others to complete and file tax returns for the filers containing false wage and federal income tax withholding information. Those returns claimed that the filers were entitled income tax refunds even though, as petitioner knew, the employment and income reported on the tax returns was false and the filers were not entitled income tax refunds. Petitioner completed and filed, or assisted in completing and filing over 90 fraudulent federal income tax returns. The IRS issued refunds on some of those fraudulent returns, paying out at least $242,910.35. Petitioner and the filers shared in the product proceeds from these fraudulent returns.

On January 26, 2017, a six-count indictment was returned in the District of Minnesota charging Petitioner with: <u>Count 1</u>, Conspiracy to Defraud the United States beginning on or about January 7, 2012, and continuing through at least May 11, 2014 in violation  of 18 U.S.C. § 286;

---

[3] Each of these three cases were prosecuted in the Carlton County District Court in Carlton, Minnesota.

Counts 2 to 6, false claims on various days from on or about January 20, 2013, to on or about May 11, 2014 in violation of 18 U.S.C. §§ 2 and 287.  On August 3, 2017,  Petitioner had his initial appearance. Bond was set at $25,000, unsecured, and as a condition of his bond, he was to remain a resident of and committed to the custody of the Moose Lake Sex Offender Program and follow all program and facility rules and regulations. In addition, he was to avoid all contact, directly or indirectly with any person who was or might be a victim or witness in the investigation or prosecution.

Petitioner pleaded guilty to Conspiracy to Defraud the United States on January 23, 2018, at which time the Court granted the Petitioner's request to remove the release restriction on contacting witnesses of the charged crime. On July 31, 2018, the Court sentenced Petitioner to 120 months in federal custody, a 24 month upward variance from the guidelines, and a three-year term of supervised release. The Court justified this variance on a number of factors: for example, if he were not prosecuted, petitioner would have (and did) keep up his fraudulent activity; Petitioner interfered not only with his own treatment at MSOP, but also the treatment of other residents; Petitioner's history showed he was a danger to the public on the streets, while committed, and in prison; and finally, Petitioner's substantial sentence for his previous federal crimes had failed to deter his criminal behavior.

Petitioner's counsel appealed the sentence under the primary jurisdiction doctrine. Petitioner's counsel also appealed the denial of his motion to suppress "on an Anders basis." The Eighth Circuit Court of Appeals affirmed the district court's judgment on July 22, 2019. The opinion noted that Petitioner maintained the district court erred by ordering him into the custody of the Federal Bureau of Prisons ("BOP") rather than returning him to state custody. The Court of Appeals noted that it had previously explained that arguments concerning a prisoner's "place of

confinement challenges the execution of his federal sentence, not its validity or legality," so Petitioner's proper avenue for relief, if any, was through a petition under 28 U.S.C. § 2241 after he had exhausted his remedies with the BOP. With respect to the denial of a motion to suppress evidence, the Court of Appeals found this contention meritless.

On September 14, 2021, Petitioner filed a motion  to vacate his conviction and sentence under 28 U.S.C. § 2255, arguing that he was denied effective assistance of counsel at the suppression hearing, at sentencing, and on appeal. The United States filed its response on October 20, 2020. On January 4, 2021, the district court denied the 2255 motion and also denied a certificate of appealability. Petitioner filed a notice of appeal and on July 1, 2021, the appeal was dismissed.

Petitioner's current projected release date via a good conduct time is April 27, 2027.

### III. The Pleadings

#### A.  The Petition

Petitioner raises two grounds for relief. First, he alleges that the BOP took custody from the State of Minnesota unlawfully. More specifically, Petitioner alleges that the district judge violated the Primary Jurisdiction Doctrine by ordering the United States Marshal Service to take him into custody at the sentencing hearing.  Second, Petitioner alleges that there is an unlawful detainer lodged against him by the State of Minnesota. For relief, Petitioner requests that this Court rule that he is in the legal custody of the BOP, that the State of Minnesota voluntarily relinquished custody to the BOP, and therefore the State of Minnesota has no jurisdiction to file a detainer pursuant to the indeterminate commitment filed in Ramsey County on April 1, 1996. Alternatively, Petitioner's memorandum asks that he be returned to state custody; that his federal sentence be run

concurrent with Minnesota's "sentence;" and that the start date of his federal sentence be set at July 26, 2017.[4]

## B. Respondent's Motion and Memorandum

Respondent maintains that Petitioner's habeas pursuant to § 2241 must be dismissed because neither the BOP nor any federal entity has jurisdiction over a state entity. In addition, Respondent contends that Petitioner's sentence cannot run concurrent to his state sentence because there is no state sentence, but instead a civil commitment. Finally, Respondent argues that the BOP appropriately calculated the start date of Petitioner's sentence.

## C. Petitioner's Response

In his response, Petitioner sets forth the history of his criminal conviction. He also recites some of the exchange between himself and the district judge at the sentencing hearing regarding "primary jurisdiction." He then compares the circumstances of his first federal conviction and the instant conviction. He then engages in a lengthy discussion regarding comity and argues that relinquishment of custody must be done as an act of comity and cannot be done judicially. Petitioner also argues that his civil commitment qualifies as "in custody" or "incarceration" because the liberty of which he was deprived is akin to those who are criminally incarcerated. Petitioner concludes by requesting declaratory judgment that the State of Minnesota, MSOP, voluntarily relinquished primary custody as an act of comity related to Ramsey County transferring his custody to the Marshal Service following his sentencing on July 31, 2018. He also asks that he be granted 369 days of jail credit because as a result of the federal court imposing bail conditions, he was confined in isolation for that period of time. In the alternative, Petitioner requests that this Court conclude that the State of Minnesota did not voluntarily relinquish custody,

---

[4] That is the date the federal Indictment was issued, and a Bench Warrant was issued for Petitioner.

and the United States Marshal Service took unlawful custody, making his incarceration in the BOP illegal.  Accordingly, in the alternative, Petitioner requests that he be returned to the custody of the State of Minnesota immediately, and his sentence be ordered to run concurrent to his civil commitment.

## IV.   <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.  In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative

level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## V. **Analysis**

### A. **Detainer**

To the extent that Petitioner is challenging the detainer, he must seek relief from the appropriate court in Minnesota.  The issuance of a detainer "is an act of the state based on the state's law and process."  Esposito v. Mintz, 726 F.2d 371, 373 (7th Cir. 1984). (citing Braden v. 30th Judicial Circuit Court, 410 U.S. 484 (1973)).  Therefore, "when a federal prisoner challenges his future confinement by challenging a state detainer the federal warden is not the prisoner's custodian."  Graham v. Brooks, 342 F.Supp.2d 256, 261 (D.Del. 2004).  Instead, the "petitioner is deemed to be in the custody of the state official lodging the detainer, at least for purposes of the habeas action."  Id. (citing Rumsfield v. Padilla, 542 U.S. 426, 438 (2004)).  Accordingly, the proper jurisdictional basis for Petitioner's challenge to the validity of the detainer is a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.  Unlike a § 2241 petition, which is brought in the district court in which the inmate is confined, a § 2254 petition challenging an interstate detainer must be filed in the district in which the detainer originated.  Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-96 (1973)[5], Wood v. North Carolina, 406 F.2d 353, 255-56 (4th Cir. 1969).  Furthermore, a petitioner seeking relief under § 2254 must first exhaust all

---

[5]In Braden, the Supreme Court reasoned that the state where the detainer originates is where all the material facts took place; it is the state where the records and witnesses are likely to be found; it is simpler and less expensive to litigate the question in that state rather than in the state where the inmate is housed; and the custodial district is presumably indifferent to the resolution of the prisoner's attack of the detainer because the dispute is not with the custodian, but with the state issuing  the detainer.  410 U.S. at 494-96.

available state remedies prior to filing his petition. <u>Brown v. Smith</u>, 826 F.2d 1493, 1495 (9th Cir. 1987); <u>Espisito</u>, 726 F.2d at 373.  Accordingly, if Petitioner wishes to challenge the detainer, he must file a § 2254 in the United States District Court for the District of Minnesota after he has exhausted his state remedies.

### B. **Prior Custody Credit**

Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination when the sentence commences. <u>United States v, Wilson</u>, 503 U.S. 329, 334 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences: (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

<u>Id.</u>

As previously noted, Petitioner is seeking credit against his current sentence for the time he spent at the MSOP from when he was released on an unsecured bond until he was sentenced on July 31, 2018, a duration he calculates to be 369 days.  However, Petitioner's bond, which required him to remain in the MSOP does not constitute official detention as contemplated by § 3585(b). Even if Petitioner was subject to more severe restrictions on the "conditions of his confinement" at the MSOP because of that institution's efforts to adhere to the district court's prohibition against Petitioner having contact with any potential witnesses or victims, he was not in official detention as the result of the offense for which his 120 month federal sentence was imposed.  He was simply ordered to remain in the MSOP in consideration of the civil commitment order of the state court.

Petitioner cites to no case law, and the undersigned is unaware of any case law which would convert his civil commitment to official detention for purposes of § 3585(b), simply because of the more restrictive terms imposed by the MSOP.  Accordingly, the BOP has properly calculated his prior custody credit by awarding him one day of credit for his arrest on August 3, 2017.

### C. <u>Primary Custody</u>

As a general rule, when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.[6]  <u>United States v. Evans</u>, 159 F.3d 908. 912 (4th Cir. 1998).  When an inmate is borrowed pursuant to a writ of habeas corpus *ad prosequendum*, the original sovereign has "merely loan[ed] that prisoner to federal authorities" and does not forfeit its primary jurisdiction. <u>Id.</u> "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." <u>Id.</u>

In the instant case, there is no question that Petitioner was initially arrested by the State of Minnesota.  However, as set forth in Section II of this Report and Recommendation, by the time Petitioner was sentenced in the United States District Court for the District of Minnesota, his first state sentence, imposed on July 29, 1993, had expired, as had his subsequent state sentences imposed on January 16, 2015 and October 15, 2015.  Therefore, Petitioner's state sentences had been satisfied for any crimes he had committed under state criminal codes.

Rather than being subject to an unexpired state sentence when the district judge imposed the 120 month sentence that he is currently serving in the BOP, Petitioner was under an indefinite civil commitment to the MSOP program.  Accordingly, Petitioner was in the Custody of the

---

[6] Generally, the issue of primary custody is discussed when a federal prisoner is seeking credit against his federal sentence for time spent in custody pursuant to writ of habeas corpus *ad prosequendum*.

Minnesota Department of Human Services which operates the MSOP program.  See Minn. Stat §
246B.02, Minn. Stat. Ch. 253D *et seq.*

The Minnesota Commitment and Treatment Act: Sexually Dangerous Persons and Sexual
Psychopathic Personalities (hereinafter the "MTCA"), codified at Minnesota Statutes Chapter
253D, establishes the law and procedures governing civil commitment for individuals who, like
Petitioner, are deemed to be either a  sexually dangerous person or a person with a sexual
psychopathic personality. See Minn. Stat. Ch. 253D.01 *et seq*. The MTCA provides in pertinent
part, that a person who has been committed under the MTCA and "later is committed to the custody
of the commissioner of corrections for any reason, including but not limited to, being sentenced
for a crime or revocation of the person's supervised release or conditional release...shall be
transferred to a facility designated by the commissioner of corrections without regard to the
procedures provided in Section 253D.29 [for transfer of committed persons to other treatment
facilities]." Minn. Stat. § 253D.22(a).  Put simply, when a civilly committed person is sentenced
to a term of imprisonment, custody of that person is transferred to facilitate execution of the prison
sentence.

Although the MTCA's provision for transfer of custody to facilitate the execution of a
sentence, is discussed in the setting of the state of Minnesota prison system, Petitioner has
advanced no argument that would indicate that the same policy would not be followed for federal
crimes committed by a person committed under the MTCA.  Moreover, because a detainer was
issued by the MSOP which caused Petitioner to be returned to it following his release from the
Minnesota Department of Corrections following expiration of his sentence for possession of a
contraband cellular phone, it is clear that the MSOP relinquishes custody when a committed person
receives a criminal sentence and must take proactive steps to regain custody upon expiration of his

sentence.  This is precisely the posture of the instant case.  The MSOP relinquished custody to the BOP and has lodged a detainer to regain custody at the expiration of his federal sentence.

Finally, even if the Court were to conclude that the State of Minnesota had primary custody by virtue of the civil commitment, under Eighth Circuit[7] law, the decision of place and  priority of execution of sentences is within the discretion of the two sovereigns and is "not subject to attack by the prisoner." United States v. McCrary, 220 F.3d 868, 870 (8th Cir. 2000) (noting a defendant's lack of standing to question primary jurisdiction custody decisions of state and federal authorities); see also United States v. Cain, 6 Fed. Appx. 542, 543 (8th Cir. 2001) (decision as to which prison sentence defendant should serve first, state or federal, is left to the two sovereigns). Accordingly, applying the substantive law of the Eighth Circuit, Petitioner has no standing to challenge state and federal comity concerning primary jurisdiction.

**D. Concurrent Sentence**

Although not discussed in his form petition or its memorandum  law in support, in his opposition to Respondent's Motion to Dismiss or for Summary Judgment, for the first time, Petitioner  maintains that he is being unlawfully held by Respondent, and therefore, should be immediately return to the "primary custody" of the State of Minnesota, and his federal sentence should run concurrent to his civil commitment.   Petitioner advanced a similar argument at the time of his federal sentencing and was unsuccessful in having his sentence ordered either to run concurrently or consecutively to his MSOP commitment.

18 U.S.C. § 3584(a) states in relevant part:

If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged  term  of  imprisonment,  the  terms  may  run  concurrently  or

---

[7] The Eighth Circuit is comprised of North Dakota, South Dakota, Nebraska, Minnesota, Iowa, Missouri, and Arkansas.

consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.

As the language of this section makes clear, the determination of whether terms of imprisonment run concurrently or consecutively applies only in situations where a sentence is imposed on a defendant who is already serving a "term of imprisonment." However, at the time his federal sentence of 120 months was imposed, Petitioner was *not* already serving a term of imprisonment; he was civilly committed. As the MCTA makes clear, individuals in MSOP custody are "committed person[s]," not prisoners. <u>See</u> Minn. Stat. § 253B.01 *et seq.* There is no question that Petitioner was civilly committed—not sentenced to a term of imprisonment.   Therefore, Petitioner's term of imprisonment does not fall within the scope of § 3584, and his federal sentence must be served in the custody of the BOP, and only upon expiration of that sentence, can he be released back to the MSOP.

## VI. <u>Recommendation</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's Motion to Dismiss or for Summary Judgment [ECF No. 10] be **GRANTED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** and **DISMISSED with prejudice**.

Further, the undersigned **RECOMMENDS** that Petitioner's pending Motion to Expedite [ECF No. 7] be **DENIED as moot**.

**Within fourteen days** after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District  Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits,

unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: July 30, 2021

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE